AUGUSTIN A. FLETCHER, executor, plaintiff in error, *vs.* JOHN W. RENFROE, treasurer, defendant in error.

1. An executive warrant upon the treasury of the state, authorizing the payment of money in pursuance of an appropriation made by law, is not a contract nor in the nature of a contract, but is only a license or power, and is revocable so long as the payment which it warranted has not been made.

2. If revocation cannot take place by the separate act of the governor, it can take place by the joint act of the governor and the general assembly; and a resolution passed by both houses and approved by the governor, instructing the treasurer not to pay the warrant, is a virtual revocation.

3. In the face of such a resolution the judiciary will not, by *mandamus*, compel the treasurer to recognize the warrant and pay out money under it

State. Governor. Executive warrant. *Mandamus.* Before Judge PEEPLES. Fulton Superior Court. April Term, 1876.

Fletcher, as executor of Henry G. Cole, deceased, held two executive warrants signed by Benjamin Conley, as governor

Fletcher vs. Renfroe.

of the state of Georgia, dated December 7th, 1871, by the first of which the treasurer of the state was directed to pay to said Cole or bearer, $6,914 35, and by the second, $7,345 00, "out of any moneys which now are, or hereafter may be, in the treasury, not otherwise specially appropriated, and place to account of 8th section, act of 24th October, 1870, to lease Western and Atlantic Railroad." The first warrant concluded with the words "Judgment of court against Western and Atlantic Railroad;" the second with "Being claim against Western and Atlantic Railroad, audited by Board of Commissioners." Both were approved by Madison Bell, the then comptroller general, on the day after their date. Needham L. Angier, the then treasurer of the state, declined to pay the warrants. The general assembly, by joint resolution approved by James M. Smith, governor, on August 24th, 1872, directed the treasurer not to pay the first of the above named warrants, and by joint resolution approved August 26th, 1872, gave similar directions as to the second. Conley was succeeded by Smith, as governor, and Angier by Jones, as treasurer. Jones was succeeded by Renfroe. Demands were made either by Cole or his executor, upon each of the aforesaid treasurers, for payment. Angier simply declined to pay the warrants; Jones and Renfroe referred, as ground for their refusal, to the aforesaid joint resolutions. Cole applied for the writ of *mandamus* against Jones, as treasurer, but before this proceeding was terminated the former died and the latter ceased to be treasurer. Fletcher, as executor of Cole, then applied for *mandamus* against Renfroe, the present treasurer. Amongst other grounds why *mandamus* should not issue against him, the latter set up the aforesaid resolutions. The petition was refused and the applicant excepted.

Many other questions were made, but are not reported as immaterial in view of the decision.

LESTER & THOMSON; McCAY & TRIPPE, for plaintiff in error.

N. J. HAMMOND, attorney general, for the defendant.

BLECKLEY, Judge.

This is a case of first impression. None like it has been cited by counsel, and none has been discovered by our own research since the argument. We shall confine our opinion to a very narrow range, keeping in view the one practical question for decision, which is, whether the remedy of *mandamus* is available to the petitioner on the state of facts in the record. We do not find it necessary to rule whether a valid appropriation of money for the payment of the claims which he seeks to collect from the state has been made or not. For the purposes of our decision, it may be conceded that the appropriation is regular, and in all respects legal. It may also be conceded that the executive warrants were duly issued, and that it was the legal duty of the treasurer then in office to pay them. The further concession may be made that *mandamus* might have been evoked to compel payment. But the writ was not applied for on the refusal of that officer to act as the warrants directed him to act. He went out of office leaving the money unpaid, and the governor, by whom the warrants were issued, went out also. These warrants descended upon their successors as outstanding; and, so far as appears, no successor in either office has recognized them as entitled to payment. · On the contrary, the governor has approved the joint resolutions of the general assembly, passed in August, 1872, instructing the treasurer not to pay them. These resolutions have been acted upon and obeyed both by the present incumbent of the treasury and his immediate predecessor. No money can be paid out of the treasury before it is appropriated. Neither can it be paid out after it is appropriated without more. There must be either express legislative authority to pay without the governor's warrant, or the governor's warrant must be produced : Code, sections 5064, 76, 92. Appropriation casts no duty upon the treasurer to pay. His duty arises from the conjunct operation of the appropriation and the warrant. One is as indispensable as the other. And it admits of grave doubt whether a warrant issued by a gov-

ernor other than the one in office when the payment is made can be legally recognized by the treasurer without approval, express or implied. There is much in the Code tending to show that the living, active head of the executive department is set as a perpetual guard over the treasury. To unlock the vaults under the fiat of a predecessor, without the concurrence of the incumbent, would lessen the security against frauds and forgeries, and would, at all events, cut into the unity of fiscal administration. It would be no strain of construction to hold that the system of the Code contemplates payment on warrants of the governor for the time being, and that those issued by previous governors are either to be renewed or sanctioned by the incumbent in some form before they can gain recognition at the treasury. The law does not require warrants to issue under the seal of the department, as it probably would do if it contemplated that they should remain of force indefinitely, It would seem that in cases of unlimited appropriations, at least, the warrants drawn by previous governors, and left over, ought to be approved or redrawn to make them effective. "Any money in the treasury not otherwise appropriated," is a far-reaching expression, and if old warrants can take the money as fast as it comes in, the governor in office may be subjected to a succession of financial surprises very embarrassing to him and very injurious to the state.

1. But we need not hold that the treasurer must have the co-operation of the governor for the time being to enable him to deliver money from the treasury. That point can be treated as not necessarily involved here; for if executive warrants are subject to revocation, these have been revoked. Are they subject to revocation? What are they? Not bills or notes. The governor has no power to execute bills or notes and bind the state. Are they contracts at all, or in the nature of contracts? We think not. They are not engagements between party and party, but the mere license of the governor, authorizing the treasurer to pay money. The creditor need not have possession of them at all. He need never see them. They

are official documents passing between two officers of the state, and may be handed from one to the other without the intervention of anybody. Usage has established a different course of dealing, but there is nothing in the nature of things that requires it. If the governor pleased to do so he might send every warrant he issues to the comptroller general, and after its approval by that officer, have it brought back to his own office and there held till paid. This would, perhaps, involve a change in book-keeping and in the system of receipts, but nothing more. It would change no legal right of the creditor, for his right is to have the money, not to have the warrant. The warrant creates no debt. It is the letter of the attorney which the state, by the governor, with the approval of the comptroller general, sends to the treasurer, authorizing him to make payment. Like any other mere power, it is revocable while it has not been carried into execution.

2. It may be that the governor alone cannot revoke it. But undoubtedly the state can. There would seem to be much reason for holding that the governor retains power over the public money, to preserve it until it is actually paid out. After issuing a warrant he may discover that he has erred or been imposed upon. He may have been grossly defrauded. To deny him power to revoke his warrant, or to prevent payment by a counter-order, would be to cripple his department. He is undoubtedly invested by law with a discretion in issuing warrants. He can be put under no direct compulsion to issue. Then why may he not be trusted by law to recall any that may be issued improvidently? But the power of the state itself is represented by the governor and the general assembly together, in measures of legislation. And the warrants now in question have been virtually revoked by the joint resolutions above referred to. The treasurer, by these resolutions, is instructed not to pay them. The reasons that moved to this action are not set forth, further than that a joint committee had investigated the subject and reported adversely to the warrants. We are bound to presume, as the tribunal was competent, that the decision was right. We

cannot, as a court, admit the possibility that the tone of Georgia, in dealing with a case of state duty or state obligation, is lower than that of those governments whose example is so forcibly presented by one of the learned judges of the court of claims, in Brown's case, 6 Nott & Hunt., 171.

3. Unless the element of contract was in the warrants themselves, and we have said it was not, whether they should live or die was for the state to decide. We think a legislative direction, by joint resolution approved by the governor, not to pay them, is to be complied with by the treasurer ; and that the judiciary should not command him by *mandamus* to do otherwise.

Judgment affirmed.