HARRISON, Comptroller-general, *v.* HARDMAN, Governor.

No. 7441. NOVEMBER 15, 1929.

438

440

*Troutman & Troutman,* for plaintiff in error.

*George M. Napier, attorney-general, T. R. Gress, assistant attorney-general, Seward M. Smith,* and *Fermor Barrett,* contra.

RUSSELL, C. J. (After stating the foregoing facts.)

1. As appears from the executive order of the Governor of September 26, 1929, the warrant was issued at the request of the State Highway Board, made on September 25, 1929. The act which authorized the Governor to issue the warrant after setting apart not exceeding forty per cent. of the revenues allocated to the State Highway Department during the period beginning September 1, 1929, and ending December 31, 1930, derived monthly from the taxes upon distributors of fuels as a special fund, and to discount the same for the purpose of meeting the obligations of the State Highway Department lawfully incurred, was approved August 26, 1929. Section 2 of that act, which authorized the Governor "to discount and/or sell said warrants so drawn against said special fund, and to place the proceeds arising therefrom in the treasury to the credit of the State Highway Department for the purpose of enabling the State Highway Department to meet its obligations lawfully incurred," required these warrants to be duly countersigned by the Comptroller-General. Section 3 of the act provides that "it shall be conclusively presumed in every court of law or equity that the monthly amount designated and set apart by the Governor by executive order in accordance with section 1 hereof has been correctly determined and set apart by the Governor pursuant to the

terms of this act." We quote from the brief of counsel for the Comptroller-General the gist of his argument: "(1) The act of, August 26, 1929, is unconstitutional in that it attempts to create a debt on behalf of the State, contrary to article 7, section 3, paragraph 1 (Code § 6558) of the constitution. (2) Because said act is illegal and unconstitutional, in that it contravenes the entire fiscal policy and financial plan provided in the constitution of this State, as it attempts to permit the Governor to anticipate revenues which may never be paid into the treasury of the State, and to create obligations of the State against revenues which are indefinite and which may never be available to the State for any purpose. (3) Because the constitutional scheme for administering the finances of the State prohibits the anticipation of revenues to be received by the State in the future for the purpose of meeting obligations already· incurred. (4) Because said warrant is a debt of the State within the prohibition of the constitution against the creation of debts, and is not for any purpose provided in said constitution as exceptions. (5) Because it did not appear in the petition that the sum stated in the warrant would be used or is necessary to meet the obligations of the State Highway Department lawfully incurred. (6) Because it did not appear what obligations of the Highway Department shall be paid with the proceeds of the warrant, nor that the obligations were lawfully incurred and legally binding obligations of said Highway Department, as provided in said act of August 26, 1929."

It can well be said from what will later appear in the discussion that the axis around which the validity of the judgment of the trial court revolves is whether the act is constitutional, as it must be presumed to be, or is unconstitutional as contended by the Comptroller-General. The scheme of the act under consideration in the present case is very similar to, though not identical with, the act passed by the General Assembly approved August 5, 1921 (Ga. L. 1921, pp. 230, 231). This act, which was construed in *Wright* v. *Hardwick*, 152 *Ga.* 302 (109 S. E. 903), was "An act to authorize the Governor, from time to time, to set apart the rental of the Western and Atlantic Railroad, for limited periods, as a special fund, and to authorize the Governor to draw warrants against said special fund, to discount the same, and to place the proceeds in the treasury for the purpose of meeting the obligations of the State

then created and incurred by law; and for other purposes." The method of procedure in the act now under consideration is the same as that dealt with in *Wright* v. *Hardwick,* and some of the constitutional questions presented to the court in the present case were passed upon in that case. This court held: "The act does not contravene any of the following declarations of the constitution of the State, viz.: (1) That no debt shall be contracted by or on behalf of the State, except as the constitution specifies. Civil Code (1910), § 6558. (2) That all laws authorizing the borrowing of money by or on behalf of the State shall specify the purpose for which it is to be used, and it shall not be used for any other purpose. Ib. § 6559. (3) That the proceeds of the sale of any property owned by the State, whenever the General Assembly may authorize its sale, shall be applied to the payment of the bonded debt of the State, and shall not be used for any other purpose whatever, so long as the State has any existing bonded debt. Ib. § 6570." In that case it was contended, as it is at this time, that the warrant when drawn and countersigned becomes a debt contracted by and on behalf of the State, contrary to the provisions of article 7, section 3, paragraph 1, of the constitution, which declares: "No debt shall be contracted by or on behalf of the State, except to supply casual deficiencies of revenue, to repel invasion, suppress insurrection, and defend the State in time of war, or to pay the existing public debt; but the debt created to supply deficiencies in revenue shall not exceed, in the aggregate, two hundred thousand dollars." Upon this contention Mr. Chief Justice Fish said: "After due consideration of this important question we have arrived at the conclusion that no debt by or in behalf of the State is so created. The warrants in pursuance of the act are drawn against a certain specified fund which it is anticipated will be in the treasury to meet them at the time fixed therein for their payment, and they are to be paid exclusively out of that fund; and should it fail to materialize, that is, not be in the treasury to meet the warrants at their maturity, then the holders of the purchased and discounted warrants would have no recourse against the State on the warrants themselves."

The act of 1921 contained a provision which is not found in the act of 1929 which we are now called upon to construe. The provision in the act of 1921 presented a very material and im-

portant difference from the act now before us, to wit, that "The holders of said warrants shall further have all the rights and privileges which the original obligees of said then incurred obligations might have had against the State." There is no such provision in the act now sub judice. It must be borne in mind that the act of 1921 authorized the Governor to discount the rental of the Western and Atlantic Railroad and place the proceeds in the treasury for the purpose of meeting the obligations of the State then created and incurred by law. In other words, while the act authorized the Governor to create a special fund derived from discounting the rentals of the Western and Atlantic Railroad, the proceeds were to be covered into the treasury for all purposes included within "the obligations of the State then created and incurred by law." In the instant case the special fund is to be raised and to be applied for one specific purpose, to pay the obligations of the State Highway Department lawfully incurred. Therefore what the Chief Justice proceeded to say, after having stated that the holders of the purchased and discounted warrants would have no recourse against the State on the warrants themselves, in construing that portion of the act of 1921 which provided that the holders of said warrants should have all the rights and privileges which the original obligees of said then incurred obligations might have had against the State, neither had any bearing in this case nor does it affect what had already been said, that no debt was created by the State by the transaction authorized in the discount of the Western and Atlantic rentals. In other words, as held by this court, "Should it [the fund] fail to materialize," "whatever rights and privileges they [the purchasers of the warrants] may have had, had not their obligations against the State been so met, are not absolutely extinguished in all respects, but shall continue to exist, or remain in abeyance for the benefit of the holders of such corresponding warrants should the specific fund for their payment fail to materialize. No debt is thus created by or on behalf of the State, but as part of the consideration for the sale and discount of the warrants the holders thereof in a given contingency are allowed certain rights which other obligees formerly had against the State which had never been entirely extinguished, but had been preserved for such holders upon a contingency." In the act then under consideration provision was being made for debts of the State itself,

and the honor, faith, and credit of the State was involved. In the act now under consideration entirely different language is used, which does not express any warranty on the part of the State. The precise statement as to the warrants mentioned in the act of 1929 now under consideration is: "The holders of said warrants shall have all the rights and privileges accorded by law to the holders of all other warrants drawn by the Governor and countersigned by the Comptroller-General."

What, then, are the general rights of holders of warrants "drawn by the Governor and countersigned by the Comptroller-General"? A warrant does not evidence a debt on the part of the State. It creates no contract. This was settled by the decision of this court in *Fletcher* v. *Renfroe, 56 Ga.* 674. Learned counsel for the plaintiff in error, recognizing the binding force and the natural effect of the rulings announced in that case, have asked that the decision be reviewed and overruled. In the *Fletcher* case Judge Bleckley, speaking of executive warrants, said: "What are they? Not bills or notes. The Governor has no power to execute bills or notes and bind the State. Are they contracts at all, or in the nature of contracts? We think not. They are not engagements between party and party, but the mere license of the Governor, authorizing the Treasurer to pay money. The creditor need not have possession of them at all. He need never see them. They are official documents passing between two officers of the State, and may be handed from one to the other without the intervention of anybody. Usage has established a different course of dealing, but there is nothing in the nature of things that requires it. If the Governor pleased to do so, he might send every warrant he issues to the Comptroller-General, and, after its approval by that officer, have it brought back to his own office and there held till paid. This would, perhaps, involve a change in bookkeeping and in the system of receipts, but nothing more. It would change no legal right of the creditor, for his right is to have the money, not to have the warrant. The warrant creates no debt. It is the letter of the attorney which the State, by the Governor, with the approval of the Comptroller-General, sends to the treasurer, authorizing him to make payment. Like any other. mere power, it is revocable while it has not been carried into execution." The ruling concurred in by a unanimous court was: "An executive warrant upon the treasury of the State,

authorizing the payment of money in pursuance of an appropriation made by law, is not a contract nor in the nature of a contract, but is only a license or power, and is revocable so long as the payment which it warranted has not been made."

The act now under consideration, instead of preserving to former obligees of the State all the former rights of such obligees in case the funds sought to be provided from the rental of the Western and Atlantic Railroad did not materialize, reserves no special privileges to the purchasers of these warrants, and warrants them nothing except their right to be paid out of the fund which will be set aside during the period between September 1, 1929, and December 31, 1930. It is argued by counsel for the plaintiff in error that this would be a mere speculation on the part of purchasers, and in another portion of the brief the proposed discount of the fund already allocated to the highway department is designated as a "gamble." We can not concur in the view that it would be either gambling or speculation in a very wild sense on the part of those who may see fit to avail themselves of the discount of the warrants proposed by the act of the General Assembly, and no implication to that effect can be drawn from the terms of the act, unless in the unexpected, not to say marvelous, contingency suggested in the argument of learned counsel for the plaintiff in error, that the people of Georgia may cease to buy gasoline, and the State fail to collect a tax of six cents per gallon upon distributors of this fuel. It is a matter of common knowledge that instead of the consumption of gasoline decreasing, there has been a constant increase in its consumption ever since the tax upon distributors was imposed. We merely hold that no debt is imposed upon the State of Georgia by the terms of the act of August 26, 1929. The general principle was clearly stated and supported by much authority in the case of *Wright* v. *Hardwick,* supra. We have already referred to the distinction which differentiates the two acts, but the same principle must be applied in construing the act of 1929 as controlled the court in its construction of the act of 1921. For more than fifty years it has been the policy of this State to have a large number of special funds or distinct accounts in the treasury department which are available only for the specific purpose for which they have been appropriated by the General Assembly; and it has frequently happened, that, while there might be ample funds appropriated for a

particular purpose to pay a warrant directed to the State Treasurer, payment would be declined unless there were sufficient funds in the treasury appropriated to the department in whose behalf the warrant had been drawn to discharge the obligation.

The State Highway Department, ever since the act of 1919, has been a department distinct and separate from all other executive departments. Under the provision of the act approved August 19, 1929 (Ga. L. 1929, p. 99), in which a tax upon fuel distributors was placed at six cents per gallon, four and one half cents thereof is appropriated and allocated to the State Highway Department. The act now before us deals only with this provision, and the Governor in his estimate (which no court, under section 3 of the act, can question) has estimated that the sum of $4,000,000 would be available if he were requested by the State Highway Board to set aside the entire amount permitted by the act as a special fund under the terms of the act. He has set aside, in the order now before us, only $2,000,000. The act proposes to pay to the highway department only this amount in advance of the collection of the fuel tax accruing up to December 31, 1930, provided the warrants can be sold or discounted at six per cent. Judged by the doctrine of probabilities as deduced from past experience in the collection of the tax on fuel distributors, this would seem to be a high-class investment for persons having money to invest. The State Highway Department, as just stated, is the department having in charge the construction of permanent roads in this State and the only medium through which the State can avail itself of Federal aid to highways in this State, but it was created a corporation and still enjoys its corporate existence as such, and the act in question is not novel in that the State assumes no liability for the obligations of the State Highway Department. To do this would perhaps require an amendment to the constitution. The facts of this case, however, are very similar to the power by which various municipalities in this State issue bonds upon the property of citizens fronting on streets a majority of whom desire to have paved, and the bonds are actually issued by the municipality; and yet this court has several times held that the municipal debt was not increased by these bond issues. Likewise the legislation now under consideration is somewhat similar to the provisions of the drainage act, where parties desiring their lands drained organize a drainage district and

incur large indebtedness without assuming any further liability than the hazard of losing the lands embraced in the drainage district. In the passage of this act the State binds itself to set aside a specified amount of the taxes imposed upon distributors of certain fuels; and should the taxes be paid, the State, as agent for the highway department, agrees to see that the holders of the discounted warrants receive payment for their warrants if enough has been collected for that purpose.

2. The second ground of illegality urged by the plaintiff in error is that the act is illegal and unconstitutional in that it contravenes the entire fiscal policy and financial plan as embodied in the constitution, as it attempts to permit the Governor to anticipate revenues which may never be paid into the treasury of this State and to create obligations against revenues which are indefinite and which may never be available to the State for any purpose. In the first division we have already held that the act does not create any obligation on the part of the State, and we have attempted to show that the revenues in question which have already been appropriated to the State Highway Department are not altogether indefinite, and most probably will become available so as to provide for the payment of the warrants which may be discounted by the Governor. As to the statement as to anticipating revenues which may never be paid into the treasury of the State, this can be said as to any appropriation made by the General Assembly; for it is possible that anticipated revenue even for ad valorem taxes on property will fall far below the estimates of a legislative budget and leave the funds in the treasury greatly depleted, as has frequently been the case in this State. As to the contention that the act is illegal and unconstitutional in that it contravenes the entire fiscal policy and financial plans embodied in the constitution, because the constitutional scheme for administering the finances of the State prohibits the anticipation of revenues for the purpose of meeting obligations already incurred, we have already pointed out that on account of the fact that in the case of *Wright* v. *Hardwick,* supra, if the State was raising the funds to pay its own obligations, the case came very much nearer to the creation of a debt on the part of the State than this case, where the legislature has empowered the Governor merely as the State's chief executive and representative to discount anticipated revenues already lawfully appropriated by the General

Assembly for the use of the highway department, to the payment of its debts; but in the case of *Wright* v. *Hardwick*, in reply to the same argument as is now presented, Mr. Chief Justice Fish said, "No scheme or fiscal policy for the State appears in any direct or express language of the constitution limiting all expenditures for the State in any one year to the revenues of the State derived from all sources during that year, and declaring that the revenues shall not be anticipated. Nor does any such fiscal policy arise by necessary implication from the constitutional declarations . . conferring the power of taxation on the General Assembly, limiting the rate of taxation to five mills for any one year, providing that all revenue and appropriation bills shall originate in the house, and that the State shall contract no debt except to supply such temporary deficiency as may exist in the treasury in any year from necessary delay in collecting the taxes for that year, limiting the amount to be so borrowed, and declaring that it shall be repaid out of the taxes levied for the year in which the loan is made." Counsel doubtless had in mind the provisions relating to counties in raising the point that all expenditures by a county are required to be raised from the revenues derived during the particular year. But, as said by Mr. Chief Justice Fish, there is no such express declaration as to the State in our constitution, nor do any of the specifications of financial policy pointed out arise by necessary implication from any provision of the constitution. As he further said: "There is nothing in the constitution prohibiting the General Assembly from anticipating revenues of this character."

3. It is insisted that the warrant is a debt of the State within the prohibition of the constitution against the creation of a debt and is not for any purpose specified in the constitution as exceptions. We consider that this ground of the illegality as stated in the brief of counsel for the plaintiff in error has been ruled in the first division of the opinion.

4. It is argued that it does not appear from the petition that the sum stated in the warrant would be used or is necessary to meet the obligations of the highway department lawfully incurred, and it is further insisted that it does not appear what obligations of the highway department shall be paid with the proceeds of the warrant, nor that the obligations were lawfully incurred and were legal obligations of said department, as provided in said act of August

26, 1929. Grounds 5 and 6, properly construed, are merely special demurrers to the petition, and in strictness do not affect the merit of the exception to the judgment granting a mandamus absolute, though exception might have been taken to the overruling of these demurrers. However, upon a consideration of the petition we are of the opinion that there is no merit in the grounds of the answer predicated upon the contentions just referred to. It is plain from a reading of the petition and the exhibits, especially the executive order, that the highway department requested the issuance of the order and the signing of the warrant involved in this case, and that this action was taken in pursuance of the request of the State Highway Board, and that it was the opinion of the Governor and the State Highway Board "that the revenue from other sources is not sufficient to meet the obligations of the State Highway Board lawfully incurred." It also appears that the special fund is to be used "for the purpose of paying warrants drawn against the same by the Governor, duly countersigned by the Comptroller-General, as provided in said act."

I conclude that the trial judge did not err in making the mandamus absolute. I am authorized to say that Justices Atkinson and Hill concur in the views above expressed.

HINES, J. 1. By paragraph 1 of section 3 of article 7 of the constitution of this State it is provided that "No debt shall be contracted by or on behalf of the State, except to supply such temporary deficit as may exist in the treasury in any year from necessary delay in collecting the taxes of that year, to repel invasion, suppress insurrection, and defend the State in time of war, or to pay the existing public debt; but the debt created to supply deficiencies in revenue shall not exceed, in the aggregate, five hundred thousand dollars, and any loan made for this purpose shall be repaid out of the taxes for the year in which the loan is made." Civil Code (1910), § 6558, as amended by the act of August 19, 1911 (Ga. Laws 1911, pp. 49, 50) ; 5 Park's Code, § 6558; Michie's Code, § 6558. The language of this section is as broad and comprehensive as could possibly be used. It provides that "No debt shall be contracted by or on behalf of the State, except" as therein specified. None of these exceptions authorizes the contraction of a debt by or on behalf of the State to pay obligations of its Highway Department. So if this transaction in its last analysis amounts to the

contraction of a debt by or on behalf of the State, it falls within the inhibition of this provision of the State constitution. The State Highway Department is an agency or instrumentality of the State, organized for the purpose of designating, improving, supervising, constructing, and maintaining a system of State-aid roads in this State. Acts 1919, pp. 242, et seq.; 8 Park's Code Supp. 1922, § 828(ooo); Michie's Code, § 828(18). To carry out this general purpose this board is authorized to create obligations when the legislature by appropriation provides funds for the accomplishment of such purpose. Whenever this board creates such obligations or debts, they are created on behalf of the State. In other words, the State is carrying on this great and important undertaking by and through its agent, the State Highway Department. Whatever obligations or debts are properly contracted by this agent are the debts or obligations of the State. In other words, the acts of this agent within the scope of its authority are the acts of the State. Obligations or debts contracted by this agent, when authorized by its principal, are the obligations or debts of the principal. The purpose of the act of August 26, 1929, is to permit the board to contract obligations or debts for the purpose of constructing these State highways, and to furnish the funds from which these obligations or debts can be paid and extinguished. So it is clearly untenable and sophistical to hold that obligations of the board, created under the provisions of the act of 1929, and to be paid for under the scheme of raising funds formulated by said act, are not debts, and that they are not debts of the State. When this board contracts with contractors for the building of State-aid roads or portions thereof, and agrees to pay them for such work given sums of money, are not these obligations debts? If not, how are they to be classified? These obligations of the board to pay contractors are not gifts or gratuities. They are simon-pure debts. Being made by the agent of the State, they are debts of the State. This conclusion is inescapable. The ingenuity of the most skilled schoolman, or the ablest juggler with logic, can not make the obligations mentioned in said act of 1929 anything but debts of the State.

2. But it is said that the warrant drawn under this act by the Governor upon the Treasurer, even if countersigned by the Comptroller-General, would not create a debt; and in support of this proposition *Fletcher* v. *Renfroe, 56 Ga. 674*, is invoked. In

that case this court was dealing with the usual and ordinary executive warrant, and not one negotiated by the Governor under this act for the purpose of raising funds to meet obligations of the State contracted by the State Highway Board, as the agent and instrumentality of the State, in constructing State-aid roads. In *Wright* v. *Hardwick,* 152 *Ga.* 302, 317 (supra), this court, in dealing with the case of *Fletcher* v. *Renfroe,* said: "Moreover the warrant there referred to, and held not to create a debt, but to be only a license or power authorizing the treasurer to pay, was the usual and ordinary executive warrant, and not one, as in this case, where a legislative act expressly empowered the Governor to draw warrants against a special specified fund, to sell and discount the warrants to the purchaser, receive the purchase-price, and deposit that in the treasury for the purpose of creating a fund for the payment of the already existing obligations of the State as designated in the legislative act." In its essence this act authorizes the State Highway Department to contract debts in behalf of the State, to the extent of $2,000,000, for the purpose of constructing State-aid roads, and authorizes the Governor to issue warrants against the fuel taxes, and to discount or sell said warrants for the purpose of securing funds and placing them in the treasury to meet and pay the debts contracted by said department. These warrants in their last analysis are drafts drawn by the Governor upon the State treasurer as drawee, payable to the order of the payees therein. On these drafts the State is liable as drawer. If not paid for any cause, the State would be legally liable thereon for their payment; certainly morally liable for their payment. It is inconceivable that the legislature intended by this act to authorize the Governor to issue a negotiable warrant, payable to a named person or order, and to discount or sell the same, get the proceeds thereof, use the same for a State purpose, and be in no way liable thereon as the drawer of such warrant. It is unreasonable to suppose that the legislature intended that the payees of these warrants would purchase or discount the same, and pay the proceeds of the discount or sale to the State, when the State would be in no wise liable to them on the warrants, if for any reason they were not paid out of the proceeds of the taxes imposed upon distributors of fuels and allocated to the State Highway Department. It is a case where the drawer of the paper would be liable to the payee if for any

reason the drawee should fail to pay the warrant. So we are of the opinion that the warrant in question, when countersigned by the Comptroller-General, would create a debt against the State; and in this respect it was wholly different from an ordinary warrant drawn by the Governor upon the State Treasurer. For this reason the principle ruled in the case cited is not applicable.

3. But it may be urged, conceding that the transaction created a debt against the State, that it is not such a one as is inhibited by paragraph 1 of section 3 of article 7 of the constitution, which declares that "No debt shall be contracted by or on behalf of the State, except" in certain named instances, among which the present transaction does not fall. As we have stated, this provision of the constitution is exceedingly broad and comprehensive. Under it no debt of any kind or character can be contracted by or in behalf of the State. It prohibits the creation of a debt which may be paid out of current taxes, as well as those which must be paid out of the taxes for future years. But it is insisted that this warrant is to be paid out of the taxes imposed upon distributors of fuel in this State, and that for this reason the debt created by the issuing of this warrant does not come within the inhibition of this constitutional provision. To sustain this proposition it is further urged that there is no provision in the constitution which prohibits the payment of debts contracted in one year from the proceeds of taxes of a future year. This proposition is unsound. This debt can be upheld only upon the theory that it is one contracted to supply a temporary deficiency in revenue in a given year, arising from necessary delay in collecting the taxes of that year. If it could be held to be such a debt, the above section of the constitution expressly provides that "any loan made for this purpose shall be repaid out of the taxes levied for the year in which the loan is made." Such a debt can not be paid from the proceeds of taxes of a future year or years. Furthermore, the debt contracted by the issuing of this warrant is not one to supply a deficiency in revenue within the meaning of this provision of the constitution of this State.

It is further insisted that the debt created by this warrant does not come within the purview of this provision of the constitution, for the reason that it is created in anticipation of the collection of imposed taxes, the proceeds of which are pledged to its payment.

This position is unsound. By paragraph 1 of section 7 of article 7 of the constitution of this State, counties, municipalities, or other political divisions of this State are prohibited from incurring "any new debt, except for a temporary loan or loans to supply casual deficiencies of revenue not exceeding one fifth of one per centum of the assessed value of the taxable property therein, without the assent of two thirds of the qualified voters thereof, voting at an election for that purpose to be held as prescribed by law." Under this provision this court has held that a liability for a legitimate current expense may be incurred by a county or municipality, provided there is, at the time of incurring the liability, a sufficient sum in the treasury of the county or municipality which may be lawfully used to pay the liability incurred, or if a sum sufficient to discharge the liability can be raised by taxation during the current year; but that the officers in charge of the affairs of counties or municipalities have no authority to contract, in behalf of a county or municipality, for a loan of money (not to supply a casual deficiency of revenue) to be used in defraying current expenses, although the notes or other obligations which evidence the loan be payable within the current year, and the general design is to discharge them from the anticipated revenue of that year. *Butts County* v. *Jackson Banking Co.,* 129 *Ga.* 801 (60 S. E. 149, 15 L. R. A. (N. S.) 567, 121 Am. St. R. 244) ; *McCord* v. *Jackson,* 135 *Ga.* 176 (6) (69 S. E. 23) ; *Tate* v. *Elberton,* 136 *Ga.* 301 (3) (71 S. E. 420) ; *City of Marietta* v. *Dobbins,* 150 *Ga.* 422 (104 S. E. 444) ; *Baker* v. *Rockdale County,* 161 *Ga.* 245 (130 S. E. 684). See Farmers Loan &c. Co. *v.* Wilcox County, 284 Fed. 856; Trust Co. *v.* Wilcox, 287 Fed. 808. If the provision of the constitution which prohibits the contraction of a debt by or in behalf of the State is not more stringent and far-reaching than the provision prohibiting the contraction of debts by counties or municipalities or other divisions of the State, and further conceding that the State may incur liabilities for current expenses, the State has no authority to incur a debt or contract for a loan of money (not to supply a casual deficiency of revenue) to be used in defraying current expenses, although the notes or other obligations which evidence the loan be payable within the current year, and the general design be to discharge them from the anticipated revenue of that year. Applying this principle, the act of August 26, 1929, is unconstitutional and

void, in the first place, because under its terms the money procured by the discount or sale of the warrants thereby provided is not to be paid within the current year and from the anticipated revenue of that year; and in the second place, because the debt to be created by the transaction under review is a debt made by and in behalf of the State in violation of the constitution of this State.

4. But it is insisted that no debt by or in behalf of the State is created by the issuance of the warrant involved in this case, because the contrary has been held in *Wright* v. *Hardwick,* supra. The decision in that case is not authority for the proposition that the transaction involved in this case does not, in its essence and last analysis, create a debt by or in behalf of the State. This court there dealt with a situation entirely different from that involved in the present case. The State owned the Western & Atlantic Railroad, and had leased it for a number of years at an annual rental of $540,000 per annum, payable monthly in advance. The State wished to borrow money, and passed an act authorizing the Governor from time to time to set apart the rental of said railroad for limited periods, as a special fund, and to draw warrants against said special fund, to discount them, and to place the proceeds in the treasury for the purpose of meeting the obligations of the State then created and incurred by law. That act provided a method by which the State set aside the rental of the railroad as a special fund, and authorized the drawing of warrants against that fund and their sale; and the transaction amounted to an assignment of the rental which the State would receive to persons who purchased these warrants. Under that act the State was disposing of the rents and issues of a piece of property which it owned and had leased. Under the act of 1929 the State is in effect procuring a loan of funds to discharge the current expenses of its Highway Board, and in carrying out the scheme promulgated by the act the State is undertaking to create a debt, which, as we have shown, is prohibited by the constitution, although the funds procured would go to pay current expenses of the State Highway Department. So there is nothing in the decision cited which in any way conflicts with the ruling that should be made in this case.

5. Under the principles above announced, it seems clear that this transaction amounts to the creation of a debt within the meaning of the provision of the constitution which prohibits the incur-

ring of any debt by or in behalf of the State. It follows that the trial judge erred in making the mandamus absolute, and that that judgment should be reversed.